William E. McClusky, J.
Two motions are involved herein. The first in point of time is one for a temporary injunction against the defendant; the second motion is one under rule 106 of the Buies of Civil Practice to dismiss the complaint.
The salient facts of the controversy are that the plaintiff is a membership corporation, nonprofit in its operations and reputedly charitable in its purposes. It owns property at No. 226 West Genesee Street in the city of Syracuse, New York. Weekly it operates an entertainment program for which it charges an admission fee of $2 per person. After the entertainment is over and without any additional charge being made therefor “ free ” games of bingo are played and prizes awarded. Members of the public are admitted free after the entertainment and they play bingo the same as those who paid for the entertainment. Some 300 chairs are provided together with 125 tables, cards, beans, markers, a tote board, a bingo machine, loud-speakers and such other apparatus and equipment as is usually used in conjunction with bingo, whether ‘ ‘ free ’ ’ or otherwise. A license is issued by the city clerk for entertainment on a nightly basis. Inasmuch as *34 bingo has not been authorized in Syracuse, no license is issued for that purpose. The chief of police has been notified by the District Attorney of Onondaga County that all forms of bingo are illegal under the “ Bingo ” amendment of the State Constitution and the implementing laws, until an affirmative referendum has been had in the city of Syracuse. The chief of police has to perform his duty in reference to bingo. Does the operation herein come within the conditions outlined in People v. Burns (304 N. Y. 380) ? If it does, does that similarity protect it from the bingo legislation?
In the Bums case, the defendant was an officer of a corporation owning a theatre. A charge of $1.25 was made for vaudeville entertainment. After that bingo was played without any further charge. Furthermore nonpaying individuals were admitted. The Court of Appeals held that there was not sufficient proof to show that the participants in the game were persons who had paid a consideration for the chance so as to constitute a lottery under section 1370 of the Penal Law. The factual situation here as revealed in the moving papers is the same except for one element. There has been a change in the law.
Section 9 of article I of the State Constitution was amended by vote of the electorate in November, 1957. A new subdivision was added. It deals entirely with ‘ ‘ bingo ’ ’ by name. The first subdivision of section 9, insofar as gambling was concerned did not deal with “ bingo ” by name but only with lotteries. Implementing statutes were adopted by the Legislature in anticipation of the approval of the constitutional amendment, known as article 19-B of the Executive Law and article 14-G of the General Municipal Law. The Constitution and both laws define ‘1 Bingo ” or “ Lotto ’ ’ as meaning ‘ ‘ a specific game of chance, commonly known as bingo or lotto, in which prizes are awarded on the basis of designated numbers or symbols on a card conforming to numbers or symbols selected at random.” (Italics supplied.) Section 1370 of the Penal Law defines a lottery as “ a scheme for the distribution of property by chance, among persons who have paid or agreed to pay a valuable consideration for the chance, whether called a lottery, raffle, or gift enterprize or by some other name.” This was the section under which the decision was rendered in the case of People v. Burns (supra). The mere reading of the two juxtaposed sections points up the difference. In the new section it is not necessary “ to pay or agree to pay a consideration” for the opportunity to play bingo. Any game which comes within the definition comes within the sweep of *35 the law. The distinction is that the entertainment with the accompanying bingo was not a lottery as defined in the Penal Law, but it is “ bingo ” as defined in the constitutional amendment. Whether or not accompanied by entertainment is of no moment. If it is bingo, then it cannot be conducted unless authorized by local option. Section 479 of the General Municipal Law imposes certain restrictions and specifically provides that “ The unauthorized conduct of a bingo game * * shall constitute and be punishable as a misdemeanor.” This emphasizes more clearly and definitely that nothing but “authorized” bingo is to be permitted. Prosecution would not be under the Penal Law but under the General Municipal Law.
To argue that bingo is not a game of chance is to fly in the face of reality. It is certainly a game in which prizes are awarded on the basis of designated numbers on a card conforming to numbers selected at random. That is a game of chance, although, for the purposes of argument only it may not be a lottery as defined in the Penal Law. Furthermore the legislation is aimed at a specific game not at games generally.
The argument is advanced that inasmuch as there has been no local referendum, the law does not apply and the old interpretation of the lottery statute is in effect. An anomalous situation would thus be presented wherein bingo with entertainment features and uncontrolled would be valid in the vacuum but controlled bingo would be illegal. The more reasonable view of the constitutional amendment and the implementing laws is that bingo is illegal in this State unless it conforms to the new legislation.
Accordingly this court holds that the complaint herein as a matter of law does not state facts sufficient to constitute a cause of action.
The complaint should be dismissed and with it the application for a temporary injunction.